UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------
                                           )
IN RE:                                     )
VIRGINIA L. WORRELL,                       )   Case No. 08-21312 (ASD)
                                           )
          Debtor                           )   Chapter 7
---------------------------------------------------
                                           )
DEAN KELLEY,                               )   Adv. Pro. No. 08-02052
                                           )
          Plaintiff,                       )
v.                                         )
                                           )
VIRGINIA L. WORRELL,                       )
                                           )
          Debtor-Defendant                 )
---------------------------------------------------


APPEARANCES:

Igor I. Sikorsky, Jr., Esq.                                Attorney for Plaintiff
PO Box 38
Unionville, CT 06085

Gregory J. Spuches, Esq.                                   Attorney for Defendant
Anderson, Reynolds & Lynch, LLP
1 Liberty Square 2nd Floor
PO Box 235
New Britain, CT 06050
_____


**MEMORANDUM OF DECISION ON COMPLAINT OBJECTING TO DISCHARGE
AND TO DETERMINE DISCHARGEABILITY OF DEBT**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge

## I. INTRODUCTION

This adversary proceeding paints an ugly portrait of a quarrel between a mother and her son. With broad strokes, Dean Kelley (hereafter, the "Plaintiff") attempts to portray his mother, Virginia Worrell (hereafter, the "Debtor" or "Defendant") as one who erupts into fits of rage, steals money from her own son, and then lies about that money in connection with her bankruptcy petition, schedules and statements. The Debtor, meanwhile, urges the Court to view the Plaintiff's portrait with great skepticism, observing in the background a mother invited to spend her retirement years sharing a home with her loving son, a son who convinced her to put her life savings into a house they would live in together, and then kicked her out onto the street. The Debtor darkens that background with an assertion her son schemed to cheat creditors by, *inter alia*, placing money solely in her hands in the first place.

While the Court certainly considers the Plaintiff's portrayal a colorful work of art, it finds that many of its details lack clarity and depth, others are embellished, and still others are irrelevant. Moreover, a lack of deceitful intent on the part of the Debtor permeates the canvas. In determining whether the alleged debt of the Debtor to the Plaintiff is dischargeable in her bankruptcy case, and whether the Debtor is entitled to a discharge at all, the Court places this picture in a very narrow frame - a frame which hangs largely on an assessment of the Debtor's state of mind coupled with the Plaintiff's failure of proof.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over

the instant proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 157(b)(2)(J).

### III. FACTUAL BACKGROUND

*A. Procedural History.*

The Debtor commenced her bankruptcy case on July 11, 2008 (hereafter, the "Petition Date"), by filing a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code. The Plaintiff filed his initial Complaint on September 30, 2008, and filed an Amended Complaint (Doc. I.D. No. 66) on May 29, 2009. In the Amended Complaint, the Plaintiff seeks a determination of nondischargeability under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B)[1], and 523(a)(4), and a denial of discharge under 11 U.S.C. §§ 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), and 727(a)(5). A hearing was held on October 19, 2009 (hereafter, the "Hearing"); post-trial briefs were filed by the Plaintiff and Defendant on October 28, and November 4, 2009, respectively. The matter is now before the Court for resolution.[2]

---

[1] The Amended Complaint alleges only two of the four subsections of §523(a)(2)(B). That Section requires all four be proved.

[2] In the Plaintiff's Post Trial Memorandum, Doc. I. D. No. 75, the Plaintiff requests "opportunity for post trial brief argument." The Defendant objects stating "the Plaintiff has not raised any issue of law . . . the oral argument of which would be helpful to the Court, nor is the Court in need of the Plaintiff's assistance in sorting through the testimony given at trial or exhibits offered and admitted at trial." Defendant's . . . Reply Memorandum, p. 8. The Plaintiff's pre-and post-trial presentations and trial conduct have scrambled the record of this proceeding to the brink of incoherence. In light of this history, further opportunity to "enlighten" the Court through additional argument would likely compound the incoherence, unduly burden the Court, and unnecessarily delay the efficient and orderly resolution of this proceeding. Accordingly, the Plaintiff's request for "post trial brief argument" is denied.

*B. Brief Factual Summary.*

As noted in the Introduction, the Amended Complaint essentially boils down to a family dispute. In 2006, the Plaintiff and the Debtor orally agreed to the purchase of a house in which they would live together with the Plaintiff's daughter. Relying upon this understanding, the Debtor sold her previous home and used some of the proceeds[3] towards the May 2006 purchase of a house titled in her name alone and located at 265 Resevoir Road (hereafter, the "New Home"), taking out a mortgage thereon in the amount of $250,000.00. Within a few months, the parties had a falling out, and the Plaintiff demanded that the Debtor leave the New Home. The Debtor left the New Home for several weeks, and upon her return discovered that the Plaintiff had changed the locks precluding her access.[4]

Several months later, in November 2006, the Debtor refinanced the mortgage on the New Home for $350,000.00.[5] She then accepted a $20,000.00 cash payment from the Plaintiff, and transferred the New Home to the Plaintiff. During approximately this same time frame the Debtor withdrew approximately $51,000.00 from a checking account in her name through which the Plaintiff "was hiding money" from a business (also in her name but controlled by the Plaintiff) named White Flames Systems.[6]

---

[3] The Debtor testified that she used the equity from the sale of her previous home (representing her life savings) as a down payment on the New Home, and also paid off $100,000.00 in credit card debt (50% of that debt attributed to her, and 50% attributed to the Plaintiff's use of her cards – the Plaintiff being unable to qualify for his own credit cards). Deposition of the Plaintiff, January 26, 2009 at p.37 (Exhibit W)(Hereafter, "Dep. at ___").

[4] Dep. at 53.

[5] Without advance knowledge of the Plaintiff.

[6] Dep. at 71.

Through the above referenced refinance, the $20,000.00 in cash she received from the Debtor in exchange for the deed to the New Home, and the White Flames withdrawals, the Debtor accessed approximately $140,000.00 (hereafter, the "Funds") in 2006. The Debtor freely admitted to taking the Funds - testifying she believed that the entirety of the Funds were hers, or were owed to her by the Plaintiff. Between 2006 and the Petition Date, the Debtor used virtually all the Funds "to live," spending it on food and restaurants, rent, trips and entertainment, and at a "Casino".[7]

## IV. DISCUSSION

### A. Burden and standard of proof

The party objecting to the granting of a discharge bears the ultimate burden of persuasion in an adversary proceeding pursuant to Section 727(a). Fed.R.Bank.P. 4005. The party opposing the bankruptcy discharge of a particular debt bears the burden of proving by a preponderance of the evidence that the requirements of the relevant subsection of Section 523(a) have been met. Grogan v. Garner, 498 U.S. 279 (1991); In re Thirtyacre, 36 F.3d 697 (7th Cir. 1994). In this proceeding the burden of proof is on the Plaintiff on all counts of the Amended Complaint.

### B. The Plaintiff has failed to establish any factual basis for relief.

With the exception of Sections 727(a)(3) and (5), the sections of the Bankruptcy Code under which the Plaintiff seeks a determination of non-dischargeability and a denial

---

[7]Plaintiff's August 13, 2008, testimony at the Section 341 Meeting, p. 40 (Exhibit V)(Hereafter, "Tr. at ___"); Dep. at 83-84.

of discharge noticeably involve the element of a wrongful or fraudulent intent.[8] The Debtor freely admitted accessing or taking the Funds,[9] but testified credibly that she believed the Funds to be owed to her, that they were hers, or she was otherwise entitled to them, that she did not hide the money,[10] and (3) sufficiently explained how she expended the money, at the Hearing and at her deposition.[11]

Based upon the credible testimony of the Debtor, the Court determines that the Debtor did not act with the requisite fraudulent intent, or wrongfully take property of another. Nor did the Debtor conceal property or fail to keep records under Section 727(a)(3).[12] Finally, the Debtor satisfactorily explained the expenditure (loss) of funds under Section 727(a)(5).[13]

### C. Assuming, arguendo, that the Plaintiff is entitled to relief on any claim, the doctrine of In Pari Delicto bars any recovery.

---

[8] See 11 U.S.C. §§523(a)(2)(A) ("false pretenses, a false representation, or actual fraud"), 523(a)(2)(B) ("with intent to deceive"), 523(a)(4) (fraud or defalcation as a fiduciary, embezzlement, or larceny), 727(a)(2)(A),(B)("with intent to hinder, delay, or defraud"), and 727(a)(4)(A) ("knowingly and fraudulently"). Intent is an element of fraud. See Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981).

[9] The Debtor testified, "Yes, I did take it." Hearing Tr., recorded October 19, 2009, at 2:54:18.

[10] The Debtor stated that she did not inform the Plaintiff of the refinance of her own mortgage because she was not obligated to, *i.e.*, "[i]t was my house." Dep. at 63.

[11] The Debtor testified, *inter alia*, that it cost her $17,000.00 to refinance and that the money she received was "[m]y own money, not Dean's money" (Dep. at 65); that she provided the Plaintiff a specific date by which he had to cease his fraudulent use of a checking account in her name (Dep. at 79); that the money she withdrew from that account was "$50,000.00. Money that he owed me." (Dep. at 80); and that she used some of the money [approximately $50,000.00] to pay off credit card debt charged to her accounts by the Plaintiff (Dep. at 35-37).

[12] See 11 U.S.C. §727(a)(3) (precluding discharge if "the debtor has concealed [property] or failed to keep [records]")

[13] See 11 U.S.C. §727(a)(5) (precluding discharge if "the debtor has failed to explain satisfactorily
. . . any loss of assets or deficiency").

In any event, even if the Plaintiff had met his burden of proof on any claim, his own wrongful conduct acts as a bar to his claims under the well-recognized doctrine of *in pari delicto* ("in equal fault"), which "provides that actions brought on illegal or corrupt bargains cannot prevail if the plaintiff . . . has been a significant participant in the subject wrongdoing, bearing at least equal responsibility for the violations he seeks to redress." In re Flanagan, 373 B.R. 216, 224 (Bankr. D.Conn. 2007). The Court finds credible the Debtor's testimony that the Plaintiff, *inter alia*, placed income from the White Flames business into a checking account under the Debtor's name, and used her Social Security number, to hide money from his creditors,[14] and provided $10,000 directly to the New Home seller thereby creating the appearance to the mortgage lender of a lower overall purchase price of the house to qualify the Debtor for a mortgage.[15] Therefore, even were he entitled to relief, the Plaintiff's conduct *in pari delicto* precludes the Court from equitably permitting him to recover from another party the fruits of that illicit conduct.

### D. There is no basis for issue preclusion in this proceeding.

Finally, the Plaintiff, relying on Exhibit Q, also argues that the Superior Court for the State of Connecticut has already determined, with preclusive effect upon this Court, "by [its] express finding" that the Defendant "embezzled, stole[ ] and fraudulently [took] money which did not belong to her." Defendant's Post-Trial Memorandum, p. 5, § 4.[16]

---

[14]Dep. at 71.

[15]Dep. at 44. Consistent with this finding, the Amended Complaint alleges the Plaintiff paid the sellers of the New Home the sum of $10,000.00 "to reduce the asking price . . . to help the [Debtor] qualify for a mortgage at the new asking price." Amended Complaint, ¶ 9.

[16]In the Plaintiff's Post Trial Memorandum the Plaintiff "asks the obvious question – **can [the Defendant] use Bankruptcy and this Bankruptcy Court** – to discharge – to evade– **the liabilities and**

There is no question that preclusion principles apply in bankruptcy proceedings. *Grogan v. Garner*, 498 U.S. 279, 285-91 (1991). Similarly, the United States Court of Appeals has opined that "[w]here the debt in question is a judgment entered after a claim of fraud has been adjudicated, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision." *Evans v. Ottimo*, 469 F.3d 278, 281 (2nd Cir. 2006) (citing *In re DeTrano*, 326 F.3d 319, 322 (2d Cir. 2003)) (internal citations omitted).

An examination of Exhibit Q, however, establishes no basis for issue preclusion in this matter. That eleven page exhibit consists of (i) an uncertified and unverified copy of a document the Plaintiff asserts is a "Complaint" filed in the Connecticut Superior Court (pp. 1- 6), (ii) an uncertified copy of a Writ, Summons and Direction of Attachment" (pp. 7-8), (iii) an uncertified copy of an "Order on Prejudgment Remedy" (p. 9), (iv) an uncertified copy of an "Officer's Return to Court" (p. 11),[17] and a one page uncertified document reading, to the extent arguably relevant:[18]

```
KELLY, DEAN           VS.
WORREL, VIRGINIA      HHB-CV-07-5006450S (PJR)
```

JUDGMENT ENTERS AFTER A HEARING IN DAMAGES IN

---

**penalties she has incurred** as a result of the theft, fraud, embezzlement, breach of contract and breach of fiduciary responsibilities **the New Britain Connecticut Superior Court found her to be guilty of and liable for – see Exhibit Q** – . . . ." Memorandum, p. 2 (Emphasis in original).

[17] Bearing the handwritten notation "Page 11 of 10".

[18] As a matter of efficiency and convenience, and with the cooperation of both parties, the Court freely admitted into evidence as full exhibits, numerous documents with the understanding that such exhibits would ultimately be given whatever weight, if any, was warranted.

8

FAVOR OF THE PLAINTIFF AS FOLLOWS:

DAMAGES: $165,677.88
COSTS: $352.00

Even if Exhibit Q consisted of certified documents they represent no "express finding" of the Superior Court, as represented by the Plaintiff, shed no light on any element of Sections 523 (other than a monetary damage award) and/or 727, and have no preclusive effect on this Court.

### V.  CONCLUSION

The Plaintiff has failed to meet his burden of proof that the any debt owed to the Plaintiff is non-dischargeable pursuant to Bankruptcy Code Section 523, and that the Debtor acted with the requisite fraudulent intent of Sections 727(a)(2) and (a)(4). Further, the Plaintiff has failed to produce sufficient evidence to warrant a denial of discharge pursuant to Sections 727(a)(3) and (5).  Accordingly, the objections to the Debtor's discharge as set forth in the Amended Complaint based upon Section 727 are **OVERRULED,** and the Plaintiff's request for a determination of nondischargeability of debts under Section 523 are **DENIED**.  The Debtor is entitled to a discharge, and the debt of the Debtor to the Plaintiff in the underlying bankruptcy case is dischargeable.

In accordance with the above, a separate judgment in favor of the Defendant on all counts of the Amended Complaint shall enter simultaneously with this Memorandum of Decision.

Dated: November 10, 2009                                              BY THE COURT

*Albert S. Dabrowski*
Albert S. Dabrowski
Chief United States Bankruptcy Judge

9

10